IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANITA M. WARNER, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 06-CV-1591-TON |
| | : | |
| FAIRBANKS CAPITAL CORPORATION, | : | |
|     Defendant. | : | |

MEMORANDUM

**O'NEILL, S.J.**                                                                                                September 25 , 2007

      Plaintiff filed a Complaint against defendant which includes allegations that defendant discriminated against her because she suffers from Multiple Sclerosis ("MS.") She claims that defendant violated the Americans with Disabilities Act. Defendant's Fifth Affirmative Defense to the Complaint is that plaintiff's claims are barred by a General Release and Severance Agreement which waived all of plaintiff's claims against defendant. Plaintiff presently claims that she did not knowingly nor voluntarily execute the Release. Before me now are: defendant's renewed motion for summary judgment; plaintiff's response in opposition thereto; defendant's reply; and plaintiff's sur-reply thereto.

FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff was employed by defendant from October 2001 through July 2002. She asserts that she was constructively discharged from her employment as a result of discrimination and harassment suffered at the hands of her former co-workers and supervisors. Plaintiff claims that she suffers from advanced MS and that her symptoms include, inter alia: cognitive difficulties, difficulties with speech and comprehension, an imbalanced gait, weakness, and motor difficulties. Plaintiff also claims that during her tenure co-workers and at least one

supervisor taunted her and called her names. She further maintains that she informed both personnel in defendant's Human Resources Department as well as other senior level managerial personnel of the allegedly harassing and discriminatory conduct. She asserts that defendant did not take any action to rectify the behavior. Plaintiff avers that despite her complaints the harassment and discrimination continued. Plaintiff finally claims that because defendant made it clear that nothing would be done to stop the harassment she was forced to resign.

   Subsequent to the cessation of her employment with defendant Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission which was dual-filed with the Pennsylvania Human Relations Commission. In her Charge plaintiff claimed violations of the Americans with Disabilities Act and the Pennsylvania Human Relations Act. The EEOC dismissed plaintiff's Charge upon defendant's notification thereto that the parties executed the Release which resolved all of Plaintiff's claims against defendant. Plaintiff presently claims that she did not knowingly and voluntarily execute the Release. Plaintiff further argues that the Release is not valid because it was executed while she was involuntarily committed to a mental health institution and also because her counsel misrepresented the contents of the document she executed.

   Plaintiff filed a Charge of Discrimination against defendant with the EEOC in December 2002 and received a right-to-sue letter therefrom in January 2003. Plaintiff retained counsel to represent her as she pursued her claims against defendant. Plaintiff's former counsel represented her during the pendency of the EEOC and PHRC litigation. Sometime after plaintiff received her right-to-sue letter and January 2003, counsel for the respective parties engaged in

settlement negotiations to resolve plaintiff's claims.  On or about March 18, 2004 defendant's counsel forwarded the Release to plaintiff's counsel.

On or about April 13, 2004 plaintiff was involuntarily committed to a mental health facility.  Plaintiff claims that on or about April 19, 2004 her former counsel visited her in the mental health facility.  Plaintiff maintains that during this visit her former counsel presented the Release to her and advised her to that she had to execute it.  Plaintiff executed the Release and her former counsel returned it to defendant's counsel.  Defendant states that it was unaware that at the time she executed the Release plaintiff was hospitalized.  Defendant issued a check to plaintiff after it received the executed Release.  Plaintiff has not returned any monies to defendant.

## STANDARD OF REVIEW

Federal Rules of Civil Procedure 56(c) provides, in relevant part, that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact.  Id. at 322-23.  If the moving party sustains the

burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial.  See Anderson, 477 U.S. at 255.  Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

## DISCUSSION

Defendant has renewed its motion for summary judgment essentially seeking to enforce the Release.[1]  Despite defendant's assertions to the contrary defendant bears the burden of proving that the Release was knowingly and voluntarily accepted because defendant raised the Release as an affirmative defense.  Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 782 (3d Cir. 2007); See also, Fed.R.Civ.P. 8(c).  The parties agree that the Court must utilize the "totality

---

[1] Earlier this year I denied without prejudice defendant's original motion for summary judgment to provide the parties with the opportunity to conduct discovery on the issue of the validity of the Release.  After the discovery on that issue closed defendant renewed its motion.

of circumstances" approach in assessing the enforceability of the Release. In order to do so the Court of Appeals has delineated factors to utilize in determining whether there has been a knowing and voluntary release or waiver of rights. See, Jakimas, 485 F.3d at 782 ; see also, Conventry v. United States Steel Corp., 856 F.2d 514, 522 (3d Cir. 1998) and Cirillo v. Arco Chem. Co., 862 F.2d 448, 451 (3d Cir. 1998). In Cirillo the Court of Appeals set forth the following factors as determinative of whether a release was executed in a "knowing and voluntary" manner:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether Plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

Cirillo 862 F.2d at 451 (3d Cir. 1988). I will address these factors seriatim.

**(1)     The Clarity and Specificity of the Release Language**

After review of the Release I conclude that it is clear and unambiguous. Despite plaintiff's assertions to the contrary the Release is clearly titled and includes capitalization and embolding of the language contained therein to both emphasize and introduce subject matter. The Release plainly sets forth the parties' respective rights and obligations. It is not confusing nor full of legalese.

Plaintiff argues that her former counsel did not explain the terms of the Release to her and that she was unable to understand them without the assistance of counsel. I will not fault defendant for plaintiff's counsel's alleged failures to assist his client effectively. Since defendant

has drafted and presented plaintiff with a clear and unambiguous Release I must conclude that this factor weighs in defendant's favor.

### (2) Plaintiff's Education and Business Experience

Plaintiff is an educated and experienced woman. As a 1997 graduate of Widener University plaintiff has been employed in various administrative and/or professional capacities since her graduation. In addition to her former employment with defendant she also held several positions as a Credit and Collection Analyst. Plaintiff previously held other positions as an Account and Office Manager. Plaintiff argues that due to her advanced MS her she has diminished cognitive faculties and abilities. She has provided several reports from her treating physicians which demonstrate that she suffers from several impairments as a result of her MS. Having viewed the evidence in the light most favorable to plaintiff I nevertheless conclude that this factor weighs in defendant's favor.

Although it is clear that plaintiff suffers from advanced MS she nevertheless managed to complete her undergraduate education and to maintain consistent employment. As defendant pointed out plaintiff has authored and published a book. Very shortly after being released from involuntary psychiatric confinement plaintiff contacted her treating physician to discuss the introduction he had written to be included in her book. These abilities negate plaintiff's contention that this factor should weigh in her favor. Plaintiff points to a statement by one of her many treating physicians that cognitively she functions on a lower high school level. There is nothing in the record to demonstrate that even functioning at this purportedly diminished cognitive capacity plaintiff was unable to understand the essence of a waiver of legal claims in

exchange for payment.  Considering all of the above I conclude that plaintiff's business and education experience weighs in defendant's favor.

> **(2)    The Amount of Time the Plaintiff Had Possession of or Access to the Agreement Before Signing it**

The Release was mailed from defense counsel's office on or about March 18, 2004 and plaintiff executed the Release on or about April 19, 2004.  Plaintiff admits that defendant did not place any time pressure or restrictions upon her to encourage execution of the Release.  Despite plaintiff's acknowledgment that defendant did not impose any deadlines for executing the Release she argues that she was still under intense pressure to sign the Release.  I note that any pressure plaintiff experienced was not exerted by defendant but instead was allegedly exerted by her former counsel.  I must find in favor of defendant on this factor since plaintiff admits that her counsel - not defendant - was the source of any lack of time she had to deliberate prior to executing the Release.  Defendant provided the Release to plaintiff's counsel over a month prior to its execution.  This factor weighs in defendant's favor.

> **(4)    Whether Plaintiff Knew or Should Have Known Her Rights upon Execution of the Release**

Plaintiff claims that she did not understand that she was waiving her rights to file a discrimination claim against defendant when she executed the Release.  Plaintiff goes to great length to focus the Court's attention on the fact that she was involuntarily hospitalized in a mental health facility when she executed the Release.  It is clear that Plaintiff was hospitalized in such a facility at the time of execution.  Also clear is that while involuntarily committed plaintiff engaged in discussions with her former counsel regarding his representation of her in order to

obtain her release from the facility.  Plaintiff also assisted in preparing her defense against an application for her extended involuntary confinement.

      Plaintiff strenuously argues that her counsel misrepresented the substance of the document she executed.  She states that she thought she was executing documentation relating to her disability payments.  Plaintiff was therefore able to understand what her counsel represented to her.  Plaintiff does not argue that she did not understand the substance of her counsel's representations.  Instead she states that she understood what her counsel allegedly said.  In other words plaintiff claims that her counsel represented that the Release pertained to disability payments.  Plaintiff understood counsel's representation and in reliance thereon executed the Release.  The relevant issue here is plaintiff's counsel's alleged misrepresentation and malfeasance.  Plaintiff's ability to understand her counsel's representations and to act in accordance therewith were not impaired.  She does not assert that her counsel represented facts that she did not understand.  Plaintiff repeatedly asserts that her counsel made misrepresentations to her.  There is a significant and important difference between plaintiff's ability to understand and any misrepresentations made by her counsel.  While plaintiff may have been misled by her former counsel there is nothing in the record to demonstrate that she did not understand him.

      Since she was represented by counsel and was able to understand his representations I find that this factor weighs in defendant's favor.  Although plaintiff argues that she did not know she was giving up rights to continue to proceed with her ADA claims against defendant I conclude that because she was represented by counsel she should have known such.  It was the duty of her counsel to inform her of the contents of the Release and to represent the contents of

the Release to her accurately. Defendant is not responsible for any misrepresentation by her former counsel. Therefore I conclude that this factor weighs in defendant's favor.

### (5) Whether Plaintiff Was Encouraged to Seek, or in Fact Received Benefit of Counsel

As discussed above plaintiff was represented by counsel when she filed a Charge against defendant with the EEOC and PHRC. Plaintiff retained counsel for more than two years for the purpose of resolving her claims against defendant. She now maintains that she did not receive the benefit of counsel since counsel allegedly did not have authority to settle claims on her behalf and also made material misrepresentations regarding the substance of the contents of the Release. Plaintiff has filed a malpractice claim against her former counsel. She argues that she should not be penalized for the ineffective assistance she received from her former attorney. I conclude that defendant should not be penalized for any ineffectiveness of plaintiff's former counsel. Plaintiff has a chosen to pursue the proper method of recourse to recover against her former counsel for his alleged wrongdoings. Therefore it is my determination that this factor weighs in defendant's favor.

### 6) Whether There Was an Opportunity for Negotiation of the Terms of the Agreement

In addressing this factor plaintiff merely asserts that she did not authorize her former counsel to settle her discrimination claims against defendant. This is not the relevant inquiry. The proper focus is whether there was an opportunity for negotiation. I find that there was. Plaintiff filed her Charge against defendant with the EEOC in January 2003. After the parties' respective counsel engaged in settlement negotiations the Release was prepared and executed by defendant's counsel in March 2004. It was then forwarded to plaintiff's counsel and executed by

plaintiff.  In her response to defendant's motion for summary judgment plaintiff notes that she never had any direct communications with defendant's counsel and that all of the alleged settlement negotiations were conducted solely between plaintiff's former counsel and defendant's counsel.  Because plaintiff was represented by counsel when the settlement negotiations took place it would not have been appropriate for defendant's counsel to participate in communications and settlement negotiations directly with plaintiff.  Her counsel conducted the negotiations on her behalf.  Therefore there was an opportunity to negotiation of the terms of the agreement.  This factor weighs in defendant's favor.

**(7)    Whether the Consideration Given in Exchange for the Waiver and Accepted by the Employee Exceeds the Benefits to Which the Employee Was Already Entitled by Contract or Law (Was the Release Supported by Consideration?)**

Both parties agree that Plaintiff received $ 3,000.00 in exchange for waiving her claims against defendant.  Without citing any authority plaintiff argues that the relevant inquiry on this issue is the reason she believed she received payment.  In support of this contention she maintains that she believed the check she received from defendant was for unpaid disability benefits.  She further argues that defendant has not offered any evidence that there was no dispute regarding unpaid disability at the relevant time.  Neither has plaintiff.  The sole inquiry is whether plaintiff received consideration in exchange for the waiver.[2]  She did.  This factor weighs in defendant's favor.

---

[2] Plaintiff asserts that there was a dispute concerning unpaid disability benefits to which she was entitled.  She has not provided the Court with any evidence to support this assertion.  On summary judgment the non-movant must set forth specific facts showing that there is a genuine issue for trial.  Plaintiff has failed to do so.

**(8)    The Absence of Fraud or Undue Influence**

Plaintiff concedes that defendant did not engage in any fraud or exert undue influence to force her to execute the Release. Plaintiff argues that because she was subjected to fraud and undue influence from her former counsel this factor should weigh in her favor. Plaintiff has pursued the proper manner of obtaining recourse against her former counsel for his alleged misconduct. Defendant cannot and will not be faulted for plaintiff's counsel's conduct. This factor also weighs in defendant's favor.

CONCLUSION

When it was faced with an attorney acting beyond the scope of his authority by settling a claim and misappropriating client funds the Pennsylvania Supreme Court held that an innocent client must bear the brunt of his counsel's errant behavior. Rothman v. Fillette, 503 Pa. 259 (1983). In analyzing which party must bear the loss in situations such as the one presented in the instant matter, the Court of Appeals stated that:

> *Rothman* is helpful...in those rare instances where an innocent principal and an innocent third party are defrauded by an agent and the court must apportion loss. More narrowly, it applies where the principal has a remedy that will not further injure the wronged third party such as the Client Security Fund...

Covington v. Continental General Tire, Inc., 381 F.3d 216, 220 (2004)(the Court held - in predicting Pennsylvania law - that a settlement agreement entered into by plaintiffs' attorney was not enforceable without the plaintiffs' express authority to settle suit on their behalf).[3] In this

---

[3] I find the Release enforceable even applying the Court's holding in Covington which is that in order for the Release to be valid plaintiff's former counsel had to have express
(continued...)

case plaintiff claims that unbeknownst to defendant her former counsel acted without her authority and negotiated a settlement agreement. She further alleges that her former counsel misrepresented the contents of the agreement and forced her to execute it. Plaintiff finally claims that defendant took a substantial portion of the proceeds of the settlement monies while she was incapable of understanding what she signed. I find <u>Rothman</u> applicable herein because both plaintiff and defendant are innocent parties with respect to any malfeasance of plaintiff's former counsel.

Each of the factors used to assess the validity of a settlement agreement weigh in defendant's favor. Considering the totality of the circumstances I conclude that plaintiff executed the Release in a knowing and voluntary fashion. Accordingly summary judgment will be granted in favor of defendant and against plaintiff.

An appropriate Order follows.

---

[3](...continued)
authority to settle the claims on her behalf. During her deposition plaintiff testified that in early 2004 her former counsel placed a call to her while defense counsel was also on hold on another of plaintiff's counsel's telephone lines. Although the call was not a conference call in which all three persons were able to hear one another speak plaintiff was able to hear defendant's counsel as well as her own. Defendant made an offer of settlement and plaintiff rejected defendant's offer. Plaintiff testified that she informed her former counsel that she thought the offer too low and instructed him to reject the offer. Considering plaintiff's testimony regarding the above I find that her former counsel had both the express and apparent authority to settle her claims against defendant.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANITA M. WARNER, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 06-CV-1591-TON |
| : | |
| FAIRBANKS CAPITAL CORPORATION, : | |
|     Defendant. : | |

### ORDER

AND NOW, this 25th day of September 2007, upon consideration of defendant Fairbanks Capital Corporation's motion for summary judgment and plaintiff's response thereto, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that defendant's motion is GRANTED, and judgment is entered in favor of defendant Fairbanks Capital Corporation and against plaintiff.

/s/ Thomas N. O'Neill, Jr

THOMAS N. O'NEILL, JR., J.